UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TYLER RAYMOND NORTON,
         Plaintiff,

         v.                                        CIVIL ACTION NO. 15-13216-GAO

MICHAEL RODRIGUES, ET AL.,
         Defendants.


MEMORANDUM AND ORDER

O'TOOLE, D.J.

BACKGROUND

On August 24, 2015, plaintiff Tyler Raymond Norton ("Norton"), formerly a prisoner in

custody at the Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts and

currently in custody at the Plymouth County Correctional Facility ("PCCF") in Plymouth,

Massachusetts,[1] filed a self-prepared Complaint (with exhibits) against a number of supervisors

and employees of SBCC, including: (1) Michael Rodrigues, SBCC Deputy Superintendent; (2)

Osvaldo Videl, SBCC Superintendent; (3)  Brian McDonald, SBCC Director of Security; (4)

Steven Silva, SBCC Director of Operations; (5) Christopher Phelps, SBCC Lt. Correction

Officer of the Inner Perimeter Security ("IPS"); (6) Brian Wozniak ("Wozniak"), SBCC IPS

Correction Officer now working at NCCI; (7) Mr. Alteri, SBCC Sgt. Correction Officer of

Assignments; (8) Gregory Bedard, SBCC Lt. Correction Officer of Discipline; and (9) John Doe

1, SBCC employee in charge of the Department Disciplinary Unit ("DDU")/Special Disciplinary

Officer.  Norton asserts claims pursuant to 28 U.S.C. § 1983 and alleges the defendants were

deliberately indifferent to his safety by failing to protect him from assault and battery by inmates

---

[1]At the time the Complaint was filed, Norton was a prisoner at SBCC; however, on
September 9, 2015, he notified the Court that he had been transferred to PCCF.

at SBCC, and by creating a pervasive risk of harm to him.

Specifically, Norton claims that on December 22, 2014, three inmates (Louis Luiz ("Luiz"), Brian Walters, and John Doe 2), all alleged known Folk/GD gang members, entered his cell, brandished a knife, and robbed him of his canteen, clothing, footwear, cosmetics, electronics, and his television.  Additionally, Norton alleges that Luiz verbally made serious threats of harm to him.  After this incident, Norton went to K2 Unit Officer Bundy and requested an emergency meeting with a mental health clinician.  He met with a clinician and told her of the incident and advised that he feared for his safety.  The clinician then contacted IPS Officer Wozniak to advise of Norton's fear.  Wozniak indicated that this incident would be investigated and the inmates' cells would be searched to recover the knife and his stolen property; however, this investigation would make it obvious to other inmates that Norton had reported the robbery incident.  Norton then stated to him that he now would be targeted by the Folk/GD gang.  He supported this claim by advising Wozniak that inmate Luiz had a prior disciplinary/DDU ticket indicating that he had orchestrated an assault and battery by two gang members against another inmate in a different unit.  Norton then requested he be moved to protective custody.  Wozniak advised him that he could not be moved there, but could be moved to another unit, G1 or J1, which had no gang members and thus would be safe; however, Norton was moved to segregation unit K3 instead.  While in K3, Luiz came to him and threatened him for reporting the robbery incident.  Thereafter, Norton was moved to segregation unit J3.  While there, Norton sent numerous letters to administration, including IPS, expressing his fear of being assaulted by gang members.  Norton received a letter from Michael Rodrigues stating that "due to enemy reasons" he would be moved to G1.  Compl. (Docket No. 1 at 10, ¶ 34).

Norton claims that on March 21, 2015, Folk/GD gang members, without provocation, assaulted and battered him by means of closed-fist punches and shod-foot kicks.  This assault

was on camera and occurred in front of G1 unit correction officers.  Thereafter, Norton was rushed to the hospital, where he underwent several surgical procedures.  He suffered a nasal fracture and bruising, and his chronic symptoms were made worse.  He alleges he has suffered Post Traumatic Stress Disorder, and received a 9-inch scar on his abdomen, as a result of the surgery.  When he returned from the hospital, Norton was placed back into the G1 Unit despite his pleas to be moved to protective custody or to another prison.

Next, Norton alleges that there are a number of violent Folk/GD gang members in various units, and the defendants have made no efforts to separate him from these inmates.  Further, he claims the defendants moved inmate Luiz to a unit close to the G1 unit, and those units share the same hallway that connects them to the main corridor.  Norton alleges that SBCC administration were aware of Luiz's control over other gang members and of his record arranging assaults on his enemies.

Norton seeks declaratory relief, as well as compensatory and punitive damages.  Along with the Complaint, Norton filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2), an *Ex Parte* Motion to Appoint Counsel (Docket No. 5), an *Ex Parte* Notice-Motion for Change of Address (Docket No. 7), and an *Ex Parte* Motion for Injunction for Property Re-Unification (Docket No. 8).

<u>DISCUSSION</u>

I.      <u>The Motion for Leave to Proceed *In Forma Pauperis*</u>

Upon review of Norton's financial affidavit and prison account statement, this Court finds that he lacks funds to pay the filing fee for this action.  Nevertheless, because he is a prisoner, he is obligated to pay the filing fee in installments pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (the *in forma pauperis* statute).

Accordingly, Norton's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2 ) is

ALLOWED, and he is Ordered to pay the fees as follows.

    A.    Norton is assessed an initial partial filing fee of $17.77, pursuant to 28 U.S.C. § 1915(b)(1)(A);[2] and

    B.    The remainder of the fee $332.23 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

The Clerk shall send a copy of this Memorandum and Order to the Treasurer's Office at PCCF in order to facilitate payments to this Court.

II.    The *Ex Parte* Motion for Change of Address

Norton's *Ex Parte* Notice-Motion for Change of Address, seeking to inform the Court of his transfer to PCCF and to request that the Court send him rulings and any future correspondence to him at PCCF is ALLOWED. The docket sheet has been modified to reflect Norton's current mailing address.

III.    Screening of the Complaint

Because Norton is a prisoner, the screening provisions of the PLRA come into play. The PLRA contains several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis*); 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact,

---

[2]The initial partial assessment represents 20% of the average monthly deposits in Norton's prison account as reflected in his prison account statement submitted, from March through August, 2015. This calculation was manually prepared and is made without prejudice to Norton seeking reconsideration based on certified account information in accordance with the formula set forth in 28 U.S.C. § 1915(b). Further, the initial partial assessment is made regardless of whether or not Norton currently has sufficient funds in his prison account to pay. The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist." 28 U.S.C. § 1915(b)(1).

Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A. In connection with this preliminary screening, Norton's *pro se* Complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

This Court finds that, although Norton has asserted his deliberate indifference claims collectively against the defendants, the best course of action is to permit the case to proceed at this time. Accordingly, the Clerk will be directed to issue summonses as to all defendants. Further, since Norton is proceeding *in forma pauperis*, he may elect to have service of process made by the United States Marshal Service, as set forth below. After service, defendants may file a Motion pursuant to Fed. R. Civ. P. 12(e) or any other appropriate motion.

IV.     The *Ex Parte* Motion to Appoint *Pro Bono* Counsel

Norton alleges that he needs appointed counsel because he is not an attorney and lacks funds to retain an attorney. Additionally, he claims he is unfamiliar with the rules of procedure, document drafting, and legal vocabulary. He also claims he has no civil legal experience and does not know how to obtain or use expert witnesses or set up hearings in this Court. Further, due to DOC rules and regulations, he is limited in receiving and possessing certain materials, has limited access to a photocopier and typewriter, and other legal materials. He also seeks to have

counsel who could negotiate with defense counsel.

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).   A civil plaintiff, however, lacks a constitutional right to free counsel.  DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).   In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  Id.  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  Id. at 24.

At this juncture, Norton has not asserted any exceptional circumstances that warrant appointment of *pro bono* counsel.  The various difficulties in litigating his civil case as a *pro se* prisoner is by no means unique; indeed, many prisoner litigants face the same hurdles.  Here, the Court considers that Norton has at least some familiarity with legal concepts and proceedings and is proficient in the English language.  Moreover, since Norton has been transferred to PCCF, there does not appear to be any exigent circumstances justifying appointment of counsel based on safety reasons.  Further, should the parties wish to enter into settlement discussions at some later point, this case could be referred to this Court's prisoner medication program, at which point counsel would be appointed for mediation purposes only.

Finally, without a response from the defendants, this Court cannot adequately gauge the merits of Norton's claims to determine whether they justify the expenditure of scarce judicial resources.

Accordingly, Norton's *Ex Parte* Motion for Appointment of Counsel (Docket No. 5) is DENIED.  After the defendants have filed responses, Norton may seek appointment of counsel

provided he set forth exceptional circumstances justifying appointment in view of the defendants' responses.

V.     The *Ex Parte* Motion for Injunction For Property Reunification

Norton seeks a Court Order to SBCC to send his property to him at PCCF, including his legal notes, case law, copies of his Complaint, and medical records.  Attached to his motion is a PCCF Inmate Request Form denying Norton's request for his records.  The denial indicates that he receives supplies on a weekly basis; however, Norton's issues with property at other facilities should be addressed with his caseworker as to the required procedure.

Here, Norton has not demonstrated to this Court that he has exhausted all available administrative remedies with respect to his request for his property from SBCC.  Further, to the extent that he needs a copy of his Complaint in order to serve the defendants through the United States Marshal Service, this Court will provide him a copy of the Complaint along with the summonses and USM 285 forms, thereby alleviating any delay in service.

Finally, after the defendants have filed responses, plaintiff may seek to obtain property from SBCC that he claims he still has not received at PCCF.

Accordingly, Norton's *Ex Parte* Motion for Injunction for Property Reunification (Docket No. 8) is <u>DENIED</u>.

CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1.     Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2.     Plaintiff's *Ex Parte* Notice-Motion for Change of Address (Docket No. 7) is <u>ALLOWED</u>;

3.     Plaintiff's *Ex Parte* Motion to Appoint Counsel (Docket No. 5) is <u>DENIED</u>;

4.     Plaintiff's  *Ex Parte* Motion for Injunction for Property Reunification (Docket No. 8) is

7

<u>DENIED</u>.

5.      The Clerk shall issue summonses with respect to defendants Michael Rodrigues, Osvaldo Videl,  Brian McDonald, Steven Silva, Christopher Phelps, Brian Wozniak ("Wozniak"), Mr. Alteri, Gregory Bedard, and John Doe 1 (SBCC employee in charge of the DDU/Special Disciplinary Officer).[3]

6.      The Clerk shall send the summonses, a copy of the Complaint, and this Memorandum and Order to the plaintiff, who must thereafter serve the defendants in accordance with Federal Rule of Civil Procedure 4(m).  The plaintiff may elect to have service made by the United States Marshal Service.  If directed by the plaintiff to do so, the United States Marshal shall serve the summonses, Complaint, and this Memorandum and Order upon the defendants, in the manner directed by the plaintiff, with all costs of service to be advanced by the United States Marshal Service.[4]

7.      Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the plaintiff shall have 120 days from the date of this Memorandum and Order to complete service.


SO ORDERED.

                                        /s/ George A. O'Toole, Jr.
                                        GEORGE A. O'TOOLE, JR.
                                        UNITED STATES DISTRICT JUDGE
DATED: October 30, 2015

---

[3]Once Norton discovers the true identity of John Doe 1, he may amend his Complaint accordingly.

[4]Notwithstanding this Order to the United States Marshal Service, it remains Norton's responsibility to provide the United States Marshal Service with all necessary paperwork and service information.